UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANEIKA BOLT,

                    Plaintiff,                              **DECISION AND ORDER**

          v.                                               6:24-CV-06061 EAW

PLANNED PARENTHOOD OF
CENTRAL AND WESTERN NEW
YORK, SARA WHITE-SMITH, and
BIVONA CHILD ADVOCACY
CENTER,

                    Defendants.

_____

## <u>INTRODUCTION</u>

Plaintiff Shaneika Bolt ("Plaintiff") brings this action pursuant to Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII"), and the New
York State Human Rights Law, New York Executive Law § 290, *et seq.* ("NYSHRL"),
alleging gender discrimination and retaliation by defendants Planned Parenthood of Central
and Western New York ("Planned Parenthood"), Sara White-Smith ("White-Smith"), and
Bivona Child Advocacy Center ("Bivona") (collectively "Defendants").    (Dkt. 1).
Presently before the Court are two motions: (1) Planned Parenthood's motion to dismiss
(Dkt. 5); and (2) White-Smith and Bivona's motion to dismiss (Dkt. 6).  For the reasons
explained below, the Court grants both motions.

- 1 -

## BACKGROUND

The following facts are taken from the complaint. As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true. Plaintiff was hired by Planned Parenthood on June 8, 2020, as a Family Advocate. (Dkt. 1 at ¶ 10). At that time, White-Smith was employed by Bivona as a Multi-Disciplinary Coordinator. (*Id.* at ¶ 7). Although Planned Parenthood and Bivona are separate organizations, they share an office space and their employees work together, engaging in daily collaboration. (*Id.* at ¶ 13). Despite the close collaboration, the source of the employees' paychecks between the two organizations is distinct. (*Id.*).

White-Smith and Plaintiff quickly developed a close working relationship with White-Smith acting as Plaintiff's mentor. (*Id.* at ¶ 14). But that relationship soured as Plaintiff became increasingly unsettled by White-Smith's actions. (*Id.* at ¶ 18). For example, White-Smith would compliment Plaintiff's physical appearance, change her office to reflect Plaintiff's likes and dislikes, and sometimes enter Plaintiff's office and stare out the window. (*Id.* at ¶¶ 15-17). In March 2022, Plaintiff walked past White-Smith's office and White-Smith shouted at her, "Shaneika, give me some titties." (*Id.* at ¶¶ 22-23). White-Smith's outburst caused two other Bivona employees to laugh. (*Id.* at ¶ 23). Over a month later, Plaintiff lodged a formal complaint about the incident with two senior leaders at Planned Parenthood. (*Id.* at ¶ 26). She also reported the incident to the Director of Human Resources at Planned Parenthood. (*Id.* at ¶ 27). No one ever contacted Plaintiff about an internal investigation of the incident. (*Id.* at ¶ 28). A few days after Plaintiff filed the internal complaint, White-Smith told Plaintiff that the CEO and

Director of Bivona instructed White-Smith to apologize for her conduct. (*Id.* at ¶ 29). Plaintiff withdrew her internal complaint the next day. (*Id.* at ¶ 34).

On June 22, 2022, Plaintiff and White-Smith both attended a team-building event for Planned Parenthood and Bivona employees at Frontier Field. (*Id.* at ¶ 40). Sometime during the event, White-Smith stood behind Plaintiff in Planned Parenthood's suite and placed her hand on Plaintiff's right buttock. (*Id.* at ¶ 41). White-Smith kept her hand fixed on Plaintiff's buttock while she talked to other Planned Parenthood employees. (*Id.*). Plaintiff did not welcome the contact and found White-Smith's action to be deeply troubling. (*Id.* at ¶ 42).

After the incident at Frontier Field, Plaintiff requested White-Smith's office be relocated. (*Id.* at ¶ 44). That request was denied, and Plaintiff's additional complaints were disregarded. (*Id.* at ¶¶ 45-46). On August 9, 2022, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against White-Smith and Bivona. (*Id.* at ¶ 52). In that complaint, Plaintiff charged Bivona and White-Smith with unlawful employment discrimination. (*Id.*). After investigation, NYSDHR determined that it had jurisdiction over the complaint and that probable cause existed to believe that Bivona and White-Smith engaged in unlawful discriminatory practices. (*Id.* at ¶ 53). Plaintiff took a medical leave on September 1, 2022, due to her stress and anxiety related to White-Smith's actions. (*Id.* at ¶ 49). Planned Parenthood terminated Plaintiff sometime in 2023. (*Id.* at ¶ 50).

On or about September 7, 2023, NYSDHR dismissed Plaintiff's complaint for administrative convenience to allow Plaintiff to pursue her claim in federal court. (*Id.*

at ¶ 54).  On or about November 1, 2023, the U.S. Equal Employment Opportunity Commission ("EEOC") provided Plaintiff with a right to sue letter.  (*Id.* at ¶ 55).

Plaintiff commenced this lawsuit on January 30, 2024.  (Dkt. 1).  On April 1, 2024, Defendants filed their motions to dismiss.  (Dkt. 5; Dkt. 6).  The Court issued an order requiring Plaintiff to file any opposition by April 22, 2024.  (Dkt. 7).  Plaintiff did not file a response or request an extension of time to do so.  (*See* Dkt. 8 at 1).

## DISCUSSION

### I.  Rule 12(b)(6) Legal Standard

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6).[1]  (Dkt. 5-2; Dkt. 6-2).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  This consideration also includes "documents upon which the complaint relies and which are integral to the complaint."  *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).  A court should evaluate the motion by "accepting all factual allegations

---

[1]    Planned Parenthood also moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1), arguing that Plaintiff failed to exhaust her administrative remedies and thus the Court lacks subject matter jurisdiction over this action.  (Dkt. 5-2 at 3).  The Second Circuit has held that "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court rather than a jurisdictional requirement."  *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (citation omitted).  "The significance of this distinction is that . . .  the district court's subject matter jurisdiction does not depend on the exhaustion of administrative remedies . . . ."  *O'Neal v. State Univ. of N.Y.*, No. CV-01-7802 (DGT), 2003 WL 1524664, at *4 (E.D.N.Y. 2003).  In recognition of this distinction, the Court considers Planned Parenthood's argument under Rule 12(b)(6).

as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    <u>Title VII Claims</u>

### A.    <u>Defendant Planned Parenthood</u>

Planned Parenthood argues that Plaintiff's Title VII claims against it must be dismissed because she "fail[ed] to name Planned Parenthood in her underlying charge of discrimination" filed with the NYSDHR and EEOC and therefore failed to exhaust her administrative remedies.  (Dkt. 5-2 at 2).  The Court agrees and accordingly dismisses Plaintiff's Title VII claims against Planned Parenthood with prejudice for failure to exhaust.

#### 1.    Exhaustion of Administrative Remedies

Individuals may bring Title VII claims in federal court only after filing a timely charge with the EEOC or authorized state agency.  42 U.S.C. § 2000e-5(e), (f); *see Williams v. New York City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).  Administrative exhaustion is an "essential element" of Title VII's statutory scheme and "a precondition to bringing

such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The purpose of the exhaustion requirement is to "give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Stewart v. United States Immigr. & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985).

Plaintiff does not allege that she filed a complaint against Planned Parenthood with either NYSDHR or EEOC.[2] Instead, Plaintiff asserts that she filed a complaint with NYSDHR only against Bivona and White-Smith ("NYSDHR Complaint") and that the state agency determined that probable cause existed to believe that Bivona and White-Smith engaged in unlawful conduct ("NYSDHR Determination"). (Dkt. 1 at ¶¶ 52-53). Plaintiff also alleges that she obtained a right to sue letter from the EEOC, but does not allege which Defendants were specified in that right to sue letter. (*Id.* at ¶ 55). Although Plaintiff did not attach the NYSDHR Complaint, NYSDHR Determination, or EEOC right to sue letter to her complaint, Planned Parenthood attached a copy of the NYSDHR Determination and EEOC right to sue letter to its motion to dismiss.[3] (*See* Dkt. 5-1 at 17-

---

[2]    The Court recognizes that Plaintiff was not required to affirmatively allege exhaustion as part of her complaint because "the burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). But as set forth herein, Planned Parenthood has met its burden to establish failure to exhaust based on the allegations in the complaint and documents integral to those allegations.

[3]    "[O]n a motion to dismiss, the Court may consider a document with terms and effects that the complaint relies heavily on, and which make the document integral to the complaint." *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 275 n.1 (W.D.N.Y. 2018) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Although Plaintiff did not attach a copy of the NYSDHR Determination or EEOC right to sue letter to her complaint, Plaintiff specifically references and relies on them in her complaint. (*See* Dkt. 1 at ¶¶ 52-55). The documents are thereby integral to the complaint and the Court

35, 45-46). The NYSDHR case number and EEOC charge number in the material provided by Planned Parenthood match the numbers stated in Plaintiff's complaint. (*See id.* at 17, 45; Dkt. 1 at ¶¶ 52, 55).

Planned Parenthood is not named in either the NYSDHR Determination or EEOC right to sue letter. (*See* Dkt. 5-1 at 17-35, 45-46). The NYSDHR Determination only lists Bivona and White-Smith as respondents and Planned Parenthood is only referred to as the unnamed third-party employer of Plaintiff. (*See id.* at 17-35). The EEOC right to sue letter also does not name Planned Parenthood and provides that the federal agency "has adopted the findings of the state or local fair employment practices agency that investigated your charge." (*Id.* at 45).[4]

## 2. Identity of Interest Exception

Plaintiff's failure to name Planned Parenthood in the NYSDHR Complaint does not necessarily foreclose her Title VII claims against it. The Second Circuit takes a "flexible stance in interpreting Title VII's procedural provisions so as not to frustrate Title VII's remedial goals," and therefore recognizes an exception to the general rule that a defendant must be named in an administrative charge. *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) (internal citation omitted) (quoting *Egelston v. State University Coll. at Geneseo*,

---

may consider them in connection with the motion to dismiss. *See Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 407 (W.D.N.Y. 2022) (considering the plaintiff's EEOC charge to evaluate Title VII claims on a motion to dismiss even though the charge was not attached to the complaint).

[4]    The EEOC right to sue letter reflects that it was copied to Bivona and White-Smith's attorney (Dkt. 5-1 at 46), but no other defense attorney.

535 F.2d 752, 754-55 (2d Cir. 1976)).  The "identity of interest" exception allows a plaintiff to proceed against a defendant not named in the administrative charge "where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge."  *Id.* (citations omitted).

Although the identity of interest exception is commonly applied to *pro se* plaintiffs, this analysis is not expressly limited to those proceeding without counsel.  *See Popat v. Levy*, 253 F. Supp. 3d 527, 535-36 (W.D.N.Y. 2017) (analyzing the applicability of the identity of interest exception even though the plaintiff was represented by counsel in the EEOC proceedings); *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 216 (N.D.N.Y. 2013) ("[A] case-by-case evaluation of the circumstances in light of the [identity of interest] factors, as opposed to a categorical ban [on plaintiffs who were represented by counsel], far better advances the goals and purposes of Title VII.").  Here, the record is unclear as to when Plaintiff obtained counsel regarding this matter.  Because of this ambiguity and in consideration that the identity of interest exception is not strictly limited to *pro se* parties, the Court will evaluate the application of the exception.

Planned Parenthood argues that it does not share an identity of interest with Bivona and therefore Plaintiff's Title VII claims against it cannot proceed.  (Dkt. 5-2 at 4-11).  Plaintiff did not oppose the pending motion and thus does not argue to the contrary.  The Court agrees with Planned Parenthood.

To determine whether an identity of interest exists between a party named in the administrative complaint and an unnamed defendant, a district court considers four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [administrative] complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the [administrative] proceedings; 3) whether its absence from the [administrative] proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)). "This four-prong test is not a mechanical one; no single factor is determinative." *Dortz v. City of New York*, 904 F. Supp. 127, 143 (S.D.N.Y. 1995). "Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies." *Senecal*, 976 F. Supp. 2d at 214.

Utilizing the four-factor test set forth above, Planned Parenthood does not share an identity of interest with Bivona. The first factor asks whether the role of the unnamed party could be ascertained by the complainant at the time she filed the administrative charge. *Johnson*, 931 F.2d at 209. It is clear from the complaint that Plaintiff knew that Planned Parenthood was her employer, and that she knew she could report instances of sexual harassment within the organization. (*See* Dkt. 1 at ¶¶ 1, 7, 10, 26, 27, 50). Plaintiff acknowledges that she "commenced her employment with Planned Parenthood on June 8, 2020," (*id.* at ¶ 10) and identifies herself "[a]s a Planned Parenthood employee" (*id.* at ¶ 7). After White-Smith shouted "give me some titties" at her, Plaintiff reported the incident to the Director of Human Resources of Planned Parenthood and Planned Parenthood "senior leaders." (*Id.* at ¶¶ 26-27). She also acknowledges that Planned Parenthood

terminated her employment in 2023. (*Id.* at ¶ 50). Accordingly, the first factor weighs in favor of Planned Parenthood. *See Manos v. Geissler*, 377 F. Supp. 2d 422, 427 (S.D.N.Y. 2005) (holding that the first factor weighs in favor of the unnamed party where its role could be ascertained by the plaintiff at the time the EEOC charge was filed).

The second factor—whether the interests of the named and unnamed parties are so similar that it would be unnecessary to include the unnamed party in the administrative proceedings—is "designed to measure whether 'the unnamed party's interests were represented adequately at the administrative proceeding.'" *Senecal*, 976 F. Supp. 2d at 223 (quoting *Zustovich v. Harvard Maint., Inc.*, No. 08 CIV. 6856 (HB), 2009 WL 735062, at *9 (S.D.N.Y. Mar. 20, 2009)). "Th[is] factor only deals with the parties' interests that relate to 'obtaining voluntary conciliation and compliance.'" *Id.* at 224 (quoting *Johnson*, 931 F.2d at 209-10). Once again, this factor favors Planned Parenthood.

Where courts have found the second factor to weigh in favor of the plaintiff, the interests of the named and unnamed entities have been closely intertwined, especially with respect to employment matters and administrative procedures. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir. 1995) (named and unnamed entities shared identical interests where unnamed entity approved all personnel decisions at named entity); *Dortz*, 904 F. Supp. at 143 (employees of the named and unnamed entities shared responsibilities for administering joint program pursuant to an affiliation agreement, the employees of both entities jointly participated in policy-making, and the unnamed entity was bound by named entity's discrimination policy); *Crosby v. McDonald's of Guilderland, LLC*, No. 1:17-CV-1160 (MAD/DEP), 2018 WL 2077884, at *12 (N.D.N.Y.

May 2, 2018) (named and unnamed entities had "common ownership and integrated their activities, labor relations, and management").

By contrast, Plaintiff's complaint lacks any allegation of a similar interconnectedness between Planned Parenthood and Bivona. Even accepting as true that the two organizations "shared office space" (Dkt. 1 at ¶ 13), that their employees "worked closely together, engaging in daily communication and collaboration" (*id.*), and that White-Smith "had supervisory authority over Plaintiff" (*id.* at ¶ 4), such circumstances are not enough to show that "the interests of [Bivona] are so similar as [Planned Parenthood's] that . . . it would be unnecessary to include" Planned Parenthood in the administrative proceedings, *see Johnson*, 931 F.2d. at 209-10. Despite the close working relationship, Plaintiff's allegations indicate that the two organizations are administratively distinct. (Dkt. 1 at ¶¶ 2, 3, 13). The two organizations have separate missions (*id.* at ¶ 2), provide different services (*id.* at ¶ 3), and the source of employee paychecks is distinct (*id.* at ¶ 13). There is no allegation of administrative intermingling between Bivona and Planned Parenthood concerning the degree of control over employees or employee conduct. *Cf. Al-Kaysey v. L-3 Servs. Inc.*, No. 11-CV-6318 RRM LB, 2013 WL 5447686, at *11 (E.D.N.Y. Sept. 27, 2013) ("[P]laintiff has pled facts indicating significant interrelation of operations as to his job function, and [named party], [unnamed party] and [second unnamed party] may share some common interests. There are contractual arrangements between [named party], [unnamed party] and [second unnamed party] that may define the degree of control concerning the parties' conduct . . . .") (internal citation and quotation omitted). As a result, the second factor weighs in favor of Planned Parenthood.

"The third factor weighs in favor of the unnamed defendant when it did not have an opportunity to be present at the [administrative] proceedings." *Senecal*, 975 F. Supp. 2d at 226. Plaintiff does not allege that Planned Parenthood had notice or any awareness of her administrative charges. Indeed, there is no indication in the NYSDHR Determination or EEOC right to sue letter that Planned Parenthood was included in any communications with the administrative agencies or had an opportunity to address the underlying charges. (*See* Dkt. 5-1 at 17-35; 45-46). Whereas Bivona responded to the NYSDHR Complaint, Planned Parenthood was never afforded the same opportunity. (*See id.* at 26-30). Planned Parenthood's absence from the administrative proceeding prejudiced it and thus the third factor weighs in Planned Parenthood's favor. *See Felton v. Monroe Cmty. Coll.*, 579 F. Supp. 3d 400, 408-09 (W.D.N.Y. 2022) ("[Unnamed defendant's] absence from the EEOC proceedings . . . have prejudiced it, given that it was not provided notice of the EEOC charge and did not have the opportunity to respond to it.").

Finally, the fourth factor—whether the unnamed defendant represented to Plaintiff that its relationship is to be through the named party—also weighs in favor of Planned Parenthood. There is no allegation that Planned Parenthood represented to Plaintiff that its relationship with her was to be through Bivona. To the contrary, Plaintiff's complaint is clear that she had a direct employment relationship with Planned Parenthood. (*See* Dkt. 1 at ¶¶ 1, 7, 10, 11, 26, 27, 50). Accordingly, the fourth factor weighs in favor of Planned Parenthood. *See Kearney v. Kessler Fam. LLC*, No. 11-CV-06016, 2011 WL 2693892, at *4 (W.D.N.Y. July 11, 2011) (holding that the identity of interest exception did not apply

- 12 -

in part because the plaintiff did not allege that the unnamed entity represented to her that her employment relationship was to be through the named entity).

The Court finds that all four identity of interest factors weigh in favor of Planned Parenthood and that Plaintiff has not met her burden of showing that the exception should be applied in this case. As a result, Plaintiff's Title VII claims against Planned Parenthood are dismissed with prejudice based on failure to exhaust administrative remedies.[5]

## B. **Defendant White-Smith**

White-Smith argues that Plaintiff's Title VII claims against her must be dismissed because there is no individual liability under Title VII. (Dkt. 6-2 at 10). The Court agrees. There is no individual liability under Title VII. *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."). Accordingly, Plaintiff's Title VII claims against White-Smith are dismissed with prejudice.

## C. **Defendant Bivona**

Defendant Bivona argues that Plaintiff has failed to state a Title VII claim against it because Bivona was not Plaintiff's employer. (Dkt. 6-2 at 6-9). The Court agrees.

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

---

[5]     Although "the Title VII exhaustion requirement is 'subject to equitable defenses,'" *Hardaway*, 879 F.3d at 490 (citation omitted), Plaintiff has not raised any such equitable defenses—indeed, she never even responded to the motions to dismiss, *see*, *e.g.*, *Gilmore v. Univ. of Rochester Strong Mem'l Hosp. Div.*, 384 F. Supp. 2d 602, 608 (W.D.N.Y. 2005) (collecting cases that a Title VII plaintiff has burden to prove applicability of equitable defenses).

Because Title VII is limited to discrimination by an employer, "[t]he plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022). That said, "[i]n alleging an employer-employee relationship, an employee is not squarely limited to claims against his or her *formal* employer." *Id.* (emphasis in original). "Pursuant to the 'joint employer doctrine,' an employee may assert Title VII liability against a 'constructive employer'—an entity that shares in controlling the terms and conditions of a plaintiff's employment." *Id.* (citing *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005)).

Determining whether an entity is a joint employer relies on the application of "non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship under the common law." *Id.* at 843; *see Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ("*Reid*"). The list of common law factors the Court identified in *Reid* include:

> [T]he hiring party's right to control the manner and means by which the product is accomplished . . . . [;] the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in the business; the provision of employee benefits; and the tax treatment of the hired party.

*Reid*, 490 U.S. at 751-52. "Broadly, these factors examine whether the alleged employer 'paid [the employees'] salaries, hired and fired them, and had control over their daily

employment activities . . . .'" *Felder*, 27 F.4th at 843 (alteration in original) (quoting *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015)).   The cornerstone of this analysis is "the element of control." *Id.* (quoting *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006)).   Generally, a joint employer relationship may be found where "an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities . . . ." *Id.* at 844.

Plaintiff's allegations do not support a plausible inference that Bivona was her joint employer.   Plaintiff does not allege that Bivona had any control over the terms of her employment, compensation, or the performance of her daily activities.   She does not allege that she performed any work for Bivona or received any compensation or benefit from Bivona.   Accepting as true that Planned Parenthood and Bivona shared office space (*id.* at ¶ 13), that their employees worked in close collaboration (*id.*), and that White-Smith "took on the role of mentoring" Plaintiff (*id.* at ¶ 7), those allegations are insufficient to maintain her Title VII claims against Bivona.   Although Plaintiff alleges that White-Smith had "supervisory authority" over her (*id.* at ¶ 4), there is no substantive allegation to support that conclusory assertion, *see Bryant v. Ciminelli*, 267 F. Supp. 3d 467, 475-76 (W.D.N.Y. 2017) (holding that a conclusory assertion without supporting factual allegation is insufficient to support a claim).   Plaintiff does not allege that White-Smith conducted performance reviews, assigned her work, or oversaw her work.   Rather, Plaintiff merely states that she "had the opportunity to shadow White-Smith on multiple cases, observing and learning from her guidance" and that they sometimes traveled together.   (Dkt. 1

at ¶ 14). That sole conclusory allegation is not enough to support a plausible inference that Bivona was Plaintiff's joint employer.

By contrast, Plaintiff is clear that she was employed directly by Planned Parenthood. Plaintiff asserts that she was hired by Planned Parenthood (*id*. at ¶¶ 1, 10), considered herself a Planned Parenthood employee (*id.* at ¶ 7), and was eventually terminated by Planned Parenthood (*id.* at ¶ 50). Plaintiff also alleges that although Planned Parenthood and Bivona employees worked closely together, the "source of their respective paychecks" remained distinct. (*Id.* at ¶ 13). *See O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) (affirming dismissal of Title VII claim against putative employer when the plaintiff did not receive "either direct or indirect economic remuneration" and was therefore not an employee); *Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 WL 4124226, at *9-10 (S.D.N.Y. Sept. 9, 2021) (dismissing Title VII claim when the plaintiff "pleads no facts about her renumeration" from alleged employer). The Court accordingly dismisses Plaintiff's Title VII claims against Bivona.

## III.    New York Human Rights Law and Supplemental Jurisdiction

With Plaintiff's federal claims dismissed, the Court must consider whether to exercise or decline supplemental jurisdiction over her remaining state-law claims. A district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.

2006) (quotations omitted).  In general "where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006).

Nothing presented here takes this case outside of that general rule and the Court declines to extend supplemental jurisdiction over Plaintiff's remaining state-law claims. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 107 (S.D.N.Y. 2023) (declining to extend supplemental jurisdiction over the plaintiff's NYSHRL claims after dismissing the federal claims); *Garcia v. Marc Tetro, Inc.*, No. 18-CV-10391 (VEC), 2020 WL 996481, at *3-4 (S.D.N.Y. Mar. 2, 2020) (declining to extend supplemental jurisdiction over New York City Human Rights Law claim in part because it "requires a separate analysis from that of Title VII").  Accordingly, Plaintiff's NYSHRL claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Planned Parenthood's motion to dismiss (Dkt. 5) is granted and White-Smith and Bivona's motion to dismiss (Dkt. 6) is also granted. Plaintiff's Title VII claims are dismissed with prejudice. Plaintiff's NYSHRL claims are dismissed without prejudice. The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      February 3, 2025
            Rochester, New York